UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                        :

RICHARD BARTON,                  :

                              :

                Plaintiff,     :

                              :

               -v-             :

                              :

SMARTSTREAM TECHNOLOGIES, INC. and   :
INTERNATIONAL BUSINESS MACHINES   :
CORPORATION,                  :

                              :

                Defendants.   :

                              :

------------------------------------------------------------------X

16 Civ. 1718 (PAE)

OPINION & ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/9/16

PAUL A. ENGELMAYER, District Judge:

      In this case, plaintiff Richard Barton, an employee who was terminated after the business unit in which he worked was sold, seeks a severance payment to which, he claims, he was entitled under the agreement between the purchasing and selling companies. Barton alleges that a severance payment for terminated employees was contemplated by the Asset Purchase Agreement ("APA" or "Agreement") between the buyer, SmartStream Technologies, Inc. ("SmartStream"), and the seller, International Business Machines Corporation ("IBM"). On that theory, Barton brings a breach of contract claim against SmartStream, for failure to pay him severance, and a breach of fiduciary duty claim against IBM, for failure to act to compel SmartStream to so pay.

      Pending now are motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). SmartStream moves to dismiss the breach of contract claim on the ground that Barton lacks standing to sue under the APA. IBM moves to dismiss the fiduciary duty claim on the ground

that it did not owe a duty to Barton to compel SmartStream to follow the terms of the APA.  For

the following reasons, the Court grants both motions and dismisses the Complaint in its entirety.

## I.      Background

### A.      Facts[1]

#### 1.      The APA

Barton is a British national who resides in Pennsylvania.  Compl. ¶ 3.  SmartStream is an

English limited company with a place of business in New York.  *Id.* ¶ 4.  IBM is a New York

corporation with a place of business in New York.  *Id.* ¶ 5.

Between September 2000 and February 1, 2015, Barton worked for IBM and "related

companies."  *Id.* ¶ 6.  At some point before January 2015, IBM decided to sell its collateral

management system, "TLM Collateral Management."  *See id.* ¶¶ 7, 16–18.  Barton alleges that

IBM "specifically intended" to sell the "then-existing TLM workforce" along with the system

itself, to "ensure that a potential buyer received the benefits it expected from purchase of the

technology."  *Id.* ¶¶ 16–17.  He alleges that IBM rejected a potential buyer because it intended to

terminate IBM's employees shortly after closing.  *Id.* ¶ 17.  He further claims that IBM made

special payments to him and other employees to "incentivize them to stay with IBM through the

acquisition process and focus on delivery of TLM Collateral Management to the new buyer."  *Id.*

¶ 16.

On January 9, 2015, the parties executed the APA, under which IBM sold TLM

Collateral Management to SmartStream.  *Id.* ¶¶ 7–8.  The APA was effective January 31, 2015.

*Id.* ¶ 7.  According to Barton, a "central purpose" of the APA was to "ensure that in connection

---

[1] The following facts are drawn from the Complaint, Dkt. 1 ("Compl."), and the accompanying
exhibits, Dkt. 5, Exs. A–C, including the APA.  The Court also cites representations made by
counsel at argument on March 29, 2016.  Citations to "Tr." refer to the argument transcript.

with the acquisition of the technology SmartStream also obtained a workforce that was experienced in the operation of TLM Collateral Management and capable of integrating it into SmartStream's existing operations."  *Id.* ¶ 14.

To that end, Article V of the Agreement provides that SmartStream would offer employment to certain IBM employees, and provide specified benefits to any such employee who accepted SmartStream's offer (collectively, the "Transferred Employees").  *Id.* ¶ 9; *see id.* ¶¶ 10–13.

Relevant here, Article V.2, entitled "Employment of Transferred Employees," provides, in pertinent part, as follows:

> Buyer shall implement the following severance pay practice for the Transferred Employees; if, within the first twelve (12) months after Closing, a Transferred Employee is involuntarily severed by Buyer without cause from full time employment with Buyer, such Transferred Employee shall receive one (1) week of severance pay for each six (6) months of service, with a minimum of four (4) weeks and a maximum of twenty-six (26 weeks).  Each week of severance pay will be an amount equal to one week of such Transferred Employee's total base employment compensation from Buyer for full time employment. . . .  For one year from the Closing Date, Buyer agrees that it will not change this Severance pay practice as applied to the Transferred Employees.

*Id.* ¶ 12; APA Art. V.2.  Barton alleges that this and other related provisions were "specifically designed to protect former IBM employees and to persuade them to accept SmartStream's offers of employment."  Compl. ¶ 15.

Two provisions in the APA, however, provide that Transferred Employees are not third-party beneficiaries.  Article XII.10, entitled "No Third Party Beneficiaries," states that:

> This Agreement is for the sole benefit of the Parties and their permitted successors and assigns and nothing herein expressed or implied shall give or be construed to give any Person, other than the Parties and such permitted successors and assigns, any legal or equitable rights hereunder.

*Id.* ¶ 28; APA Art. XII.10.  And—particularly salient to this controversy—Article V.3, entitled

"Termination of Transferred Employees," specifically states that "[n]o Transferred Employee is

or shall be deemed a third party beneficiary of this Agreement."  Compl. ¶ 13; APA Art. V.3.

### 2.    Barton's Termination and Attempts to Enforce the APA

At some point "[a]fter signing the APA but prior to the closing date, SmartStream

informed IBM that if revenue from TLM Collateral Management did not meet expectations,

SmartStream would terminate some former IBM employees as a cost-saving measure."  Compl.

¶ 19.

On January 23, 2015, SmartStream offered Barton a position as "Program Director –

TLM Collateral Manager," with a base annual salary of $202,926.  *Id.* ¶ 20; Dkt. 5, Ex. B, at 1.

Barton accepted SmartStream's offer and began working for SmartStream on February 1, 2015,

the day after the APA took effect.  Compl. ¶ 21.

On June 4, 2015, SmartStream notified Barton that his employment would be terminated,

effective June 18, 2015.  *Id.*; Dkt. 5, Ex. C, at 1.  This termination, Barton alleges, was "without

cause."  Compl. ¶ 22.  In a termination letter, SmartStream offered Barton a separation package

that included severance pay equal to two weeks' base salary, conditioned on Barton's signing a

waiver and a general release of any legal claims against SmartStream.  *Id.* ¶ 23; Dkt. 5, Ex. C, at

2.  Barton refused this offer, on the ground that the package did not comply with SmartStream's

obligations under Article V.2 of the APA, under which, Barton claimed, he was entitled to

severance pay equal to 26 weeks' base salary, based on his approximately 15-year employment

with IBM.  Compl. ¶¶ 24–25.

Upon learning of his impending termination, Barton claims, he contacted four IBM

employees for assistance in enforcing the APA's severance-pay provision.  *Id.* ¶ 26.  One IBM

employee told Barton that IBM's legal team "would contact him when they had information on

4

the impacted Transferred Employees." *Id.* ¶ 27.  As of July 27, 2015, when Barton filed the Complaint, IBM had not followed up with him about that issue.  *Id.*

### B.    Procedural History

On July 27, 2015, Barton filed his Complaint in United States District Court in the Eastern District of Pennsylvania (Diamond, J.), bringing claims against SmartStream and IBM for breach of contract and breach of fiduciary duty, respectively.  Dkt. 1.  In the breach of contract claim, Barton alleges that he is a third-party beneficiary of the APA, and that SmartStream breached its obligation under the APA to pay him severance pay as quantified under Article V.  Compl. ¶¶ 30–37.  In the fiduciary duty claim, Barton alleges that IBM breached a duty to him and other Transferred Employees when it failed to ensure that SmartStream complied with Article V.  *Id.* ¶¶ 38–42.  On September 17, 2015, Barton filed exhibits to the Complaint that inadvertently had been omitted from his initial filing.  Dkt. 5.

On October 9, 2015, IBM moved to dismiss Barton's breach of fiduciary duty claim, under Rule 12(b)(6), Dkt. 11, and filed a memorandum of law in support, *id.*, Ex. 1 ("IBM Br."). The same day, SmartStream moved to transfer venue to this District, pursuant to 28 U.S.C. § 1404(a), and to dismiss Barton's breach of contract claim, pursuant to Rule 12(b)(6), Dkt. 12, and filed a memorandum of law in support, *id.*, Ex. 1 ("SmartStream Br.").  On October 30, 2015, Barton filed a brief opposing each motion.  Dkt. 19 ("Barton-SS Opp. Br."); Dkt. 20 ("Barton-IBM Opp. Br.").  On November 4, 2015 and November 25, 2015, IBM and SmartStream, respectively, replied.  Dkt. 21 ("IBM Reply Br."); Dkt. 22 ("SmartStream Reply Br.").

On January 29, 2016, Judge Diamond granted the motion to transfer, based on a forum selection clause in the APA.  Dkt. 24 ("Transfer Decision").  He denied SmartStream's and IBM's motions to dismiss, without prejudice to their renewal in this District.  *Id.*

On March 7, 2016, the case was assigned to this Court.  Dkt. 25.  On March 23, 2016, the

Court granted the parties' request to treat the previously filed motions to dismiss as pending.

Dkt. 29.  On March 29, 2016, the Court heard argument.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent

with' a defendant's liability, it 'stops short of the line between possibility and plausibility of

entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, a district court must "accept[] all factual claims in the

complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  *Lotes Co. v. Hon*

*Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th*

*Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010) (internal quotation marks omitted)).  However,

this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the

speculative level, *i.e.*, enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604

F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 555, 570) (internal quotation marks

omitted) (emphasis in *Arista Records*).  A complaint is properly dismissed where, as a matter of

law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to

relief."  *Twombly*, 550 U.S. at 558.

### III.     Discussion

####    A.     Choice of Law

As a threshold matter, the Court must determine which state's substantive law to apply to Barton's claims.

Generally, a federal court sitting in diversity applies the substantive law of the state in which it sits, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941); *Valley Juice Ltd. v. Evian Waters of Fr., Inc*., 87 F.3d 604, 607 (2d Cir. 1996). However, where, as here, a case is transferred from one federal jurisdiction to another under 28 U.S.C. § 1404(a), the transferee court is to apply the substantive law, including the choice of law rules, of the transferor court's jurisdiction. *Ferens v. John Deere Co*., 494 U.S. 516, 519 (1990); *Valley Juice*, 87 F.3d at 607; *Maltz v. Union Carbide Chems. & Plastics Co.*, 992 F. Supp. 286, 295 (S.D.N.Y. 1998). Therefore, because this case was transferred from the Eastern District of Pennsylvania pursuant to § 1404(a), the Court must apply Pennsylvania's choice of law rules.

Here, both of Barton's claims arise from the APA, which contains a choice of law clause providing that New York law shall govern "all matters arising from or relating in any manner to the subject matter of th[e] Agreement." APA Art. XII.7; *see* Tr. 29 (statement by plaintiff's counsel that IBM's fiduciary duty to Barton arose when it executed the APA). Pennsylvania courts will "honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them" unless: (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or (2) "the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the

particular issue." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 384 Pa. Super. 65 (1989), *appeal denied*, 524 Pa. 610 (1990); *Schifano v. Schifano*, 324 Pa. Super. 281, 290 & n.5 (1984)).

Barton does not argue that either exception applies here—and neither does.[2]  Rather, Barton argues that the choice of law clause in the APA is qualified such that it does not require the application of New York law to Barton's claims.  That is wrong.

Article XII.7 of the APA, entitled "Governing Law; Jurisdiction," provides that:

> [A]ll matters arising from or relating in any manner to the subject matter of this Agreement shall be interpreted, and the rights and liabilities of the Parties determined, in accordance with the Laws of the State of New York applicable to agreements executed, delivered, and performed within such State, without regard to the principles of conflicts of laws thereof.

_____

[2] New York has a substantial relationship to both the parties and the transaction, as SmartStream and IBM each have a place of business in New York, Compl. ¶¶ 4–5, and the APA states that it was "delivered at and shall be deemed to have been made in New York County, New York," APA Art. XII.7; *see* Transfer Decision, at 8 (noting that "public interest factors" favored transfer to New York because "New York—the place of contracting and Defendants' places of business—has a more substantial relationship to this transaction and a stronger interest in resolving this dispute" than Pennsylvania).  And applying New York law to Barton's claims would not contravene Pennsylvania public policy because (1) Pennsylvania, like New York, enforces contractual provisions negating the rights of third-party beneficiaries, albeit subject to one exception that does not apply here, *see Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 530 (E.D. Pa. 2011) (Pennsylvania courts will disregard express disclaimers of third-party beneficiaries "only where the purported third-party beneficiaries were the sole or primary beneficiaries of the contract's performance"); and (2) New York and Pennsylvania law do not materially differ on the requirements for a fiduciary relationship, *see McDermott v. Party City Corp.*, 11 F. Supp. 2d 612, 626 (E.D. Pa. 1998) (fiduciary relationship exists "where one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other") (internal quotation marks and citation omitted); *EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19–20 (2005) (fiduciary relationship exists when one person is "under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation," *i.e.*, where there is a "relationship of higher trust" than would arise from a typical business relationship alone) (internal quotation marks and citations omitted).

APA Art. XII.7.  Barton interprets this clause to require the application of New York law only to agreements that are "executed, delivered, and performed" in New York.  Barton-SS Opp. Br. 12. Because he performed his duties for SmartStream in Pennsylvania, Barton argues, the choice of law provision does not apply.  *Id.*

The Court rejects this reading of Article XII.7, as it is contrary to its plain text.  Article XII.7 unambiguously calls for the application of New York law to "*all matters arising from or relating in any manner to the subject matter of [the APA]*."  The reference to "the law applicable to agreements executed, delivered, and performed in [New York]" denotes only the law which is to be applied to matters covered by the provision—it does not impose a limitation on the scope of that law's application.

Accordingly, because Barton does not claim that the choice of law clause is otherwise unenforceable, the Court holds that New York law governs his claims.  *See Mylan, Inc. v. Zorich*, No. 12 Civ. 80, 2012 WL 527662, at *5 (W.D. Pa. Feb. 16, 2012) (applying Pennsylvania law to third-party beneficiary claim where contract's choice of law provision specified that Pennsylvania law governed); *Broederdorf v. Bacheler*, No. 15 Civ. 2117, 2015 WL 5334265, at *5 (E.D. Pa. Sept. 14, 2015) (breach of fiduciary duty claim governed by law specified by contract's choice of law clause where plaintiff alleged that fiduciary duty arose from contract); *McGoldrick v. TruePosition, Inc.*, 623 F. Supp. 2d 619, 626 (E.D. Pa. 2009) (same).

### B.      Breach of Contract Claim

Barton's breach of contract claim against SmartStream is based on the premise that he is an intended third-party beneficiary of the APA and that SmartStream breached its obligation to pay him severance in accordance with the Agreement.  Compl. ¶¶ 30–37.  SmartStream argues that, while the APA does anticipate the payment of such severance pay, Barton does not have

standing to sue to enforce its severance-pay provision, because the APA expressly precludes—it

negates—third-party beneficiary status.  SmartStream is correct.

"Under New York law, the effectiveness of a negating clause to preclude third-party

beneficiary status is well-established:  '[W]here a provision exists in an agreement expressly

negating an intent to permit enforcement by third parties, . . . that provision is decisive.'"

*India.com v. Dalal*, 412 F.3d 315, 321 (2d Cir. 2005) (quoting *Nepco Forged Prods.*, *Inc. v.*

*Consol. Edison Co. of N.Y., Inc.*, 470 N.Y.S.2d 680, 681 (2d Dep't 1984)); *accord Wilson v.*

*Dantas*, 746 F.3d 530, 537 (2d Cir. 2014) ("[C]ourts within this Circuit have consistently held

that 'even where a contract expressly sets forth obligations to specific individuals or categories

of individuals, those individuals do not have standing to enforce those obligations by suing as

third-party beneficiaries when the contract contains a negating clause.'" (quoting *In re Lehman*

*Bros. Holdings Inc.*, 479 B.R. 268, 275–76 (S.D.N.Y. 2012), *aff'd*, 513 F. App'x 75 (2d Cir.

2013) (summary order)).

The APA contains provisions that expressly negate the rights of third-party beneficiaries

in general, and of Transferred Employees such as Barton in particular.  Article XII.10, entitled

"No Third Party Beneficiaries," provides that "[t]his Agreement is for the sole benefit of the

Parties and their permitted successors and assigns and nothing herein expressed or implied shall

give or be construed to give any Person, other than the Parties and such permitted successors and

assigns, any legal or equitable rights hereunder."  Compl. ¶ 28; APA Art. XII.10.  And Article

V.3, entitled "Termination of Transferred Employees," states that "[n]o Transferred Employee is

or shall be deemed a third party beneficiary of this Agreement."  Compl. ¶ 13; APA Art. V.3.

Courts have long held that negating clauses such as these prevent a transferred employee from

enforcing severance provisions in an asset purchase agreement between his former employer and

the company that acquired its business.  *See In re Lehman Bros.*, 479 B.R. at 275–76; *LaFata v. Raytheon Co.*, 147 F. App'x 258, 261–62 & n.4 (3d Cir. 2005) (applying New York law).

Barton nevertheless argues that Article XII.10 does not preclude his claim against SmartStream because it is facially ambiguous.  Barton-SS Opp. Br. 14–17.  He contends that the phrase "and nothing herein . . . shall be construed to give any [third party] . . . any legal or equitable rights hereunder" is unclear because the clause does not specify whether the word "herein" refers only to Article XII.10 or to the entire APA.  *Id.* at 16.  Given this ambiguity, Barton argues, his claim cannot be dismissed on the pleadings.  *Id.* at 13, 16–17 (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 178 (2d Cir. 2004) ("[I]f a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim.")).

Barton's argument fails because, even if the precise scope of the "herein" clause were open to debate, under any reading of Article XII.10, it unequivocally forecloses any third-party beneficiary status for a terminated employee like Barton.  "Contract language is not ambiguous if it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'"  *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (quoting *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 355 (1978)); *see also Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) ("Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation.").  Here, there is nothing ambiguous about the statement that the Agreement is for the "*sole* benefit of the Parties and their permitted successors and assigns."  APA Art. XII.10.  And even if Article XII.10 were materially ambiguous, which it is not, Article V.3—which Barton ignores in his

brief—unmistakably negates any rights of any Transferred Employee to bring suit under the APA.  *See* Tr. 11 (concession by Barton's counsel that "article 5.3 . . . seems to kind of put the nail in the coffin of Mr. Barton's claim").

This case is thus easily distinguished from *Bayerische Landesbank v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42 (2d Cir. 2012), on which Barton relies.  There, the negating clause at issue stated that no one other than the parties "shall have any right, benefit or interest under or because of this Agreement, *except as otherwise specifically provided herein.*"  *Id.* at 53 (emphasis in *Bayerische*).  The Second Circuit held that this provision did not necessarily negate the existence of third-party beneficiaries because it arguably left open the possibility that non-parties might have rights enumerated in other parts of the agreement.  *Id.* at 53–54.  Accordingly, the Circuit held, it was necessary to look to other provisions of the contract to determine whether it precluded third-party beneficiaries.  *Id.* at 54.

Here, by contrast, there is nothing in the language of either Article XII.10 or Article V.3 that even faintly suggests that other provisions of the APA may create third-party rights.  Rather, like the negating clauses distinguished by the court in *Bayerische*, these provisions "definitively preclude[] any intent by the parties to confer a benefit on a third party," including Barton.  *Id.* at 54 (citing *India.com*, 412 F.3d at 318).  They are, therefore, "decisive."  *India.com*, 412 F.3d at 321 (internal quotation marks and citation omitted).

Because Barton is not a third-party beneficiary of the APA, he lacks standing to enforce its provisions.  His breach of contract claim against SmartStream, therefore, must be dismissed.

### C.      Breach of Fiduciary Duty Claim

Barton's fiduciary duty claim alleges that IBM breached its fiduciary duty to him when it failed to ensure that SmartStream complied with the APA's severance-pay provision.  IBM

argues that this claim must be dismissed because IBM did not owe Barton, or any Transferred Employee, a fiduciary duty to enforce the terms of the Agreement.  IBM is correct.

Under New York law, "[i]n order to succeed on a cause of action . . . for breach of fiduciary duty, a plaintiff must do more than make allegations of unscrupulous acts." *Robert I. Gluck, M.D., LLC v. Kenneth M. Kamler, M.D., LLC*, 904 N.Y.S.2d 151, 152 (2d Dep't 2010). Rather, a plaintiff must allege "(1) the existence of a fiduciary duty, (2) breach of that duty by the defendant[,] and (3) damages." *Wilson v. Dantas*, No. 12 Civ. 3238 (GBD), 2013 WL 92999, at *3 (S.D.N.Y. Jan. 7, 2013), *aff'd*, 746 F.3d 530 (2d Cir. 2014).

As to the first element, an employer does not owe a fiduciary duty to its employees simply by virtue of the employment relationship.  *See Rather v. CBS Corp.*, 886 N.Y.S.2d 121, 125 (1st Dep't 2009) ("The law . . . in every reported appellate-division-level case[] is that employment relationships do not create fiduciary relationships.  Simply put, [the employer] did not owe plaintiff, as employee, a fiduciary duty." (internal quotation marks omitted)) (collecting cases); *accord Wilson*, 2013 WL 92999, at *4 (noting that "employers owe current employees no fiduciary duties," and "similarly do not owe such duties to former employees").  Rather, a fiduciary relationship arises only "when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672 (1st Dep't 1987)) (internal quotation marks omitted).  Accordingly, for Barton to adequately plead that IBM owed him a fiduciary duty to enforce the severance-pay provision of the APA, he must allege that IBM was under a duty to act for him (or all Transferred Employees) when it negotiated and executed the Agreement.  He has not done so.

Notably, the Complaint does not allege that IBM ever represented to the Transferred Employees that it would negotiate or enforce the severance-pay provision on their behalf. Nor does it plead that Barton relied on such a representation, reasonably or otherwise, when he decided to work for SmartStream.

Rather, Barton argues that the following conduct, alleged in the Complaint, "evinces an undertaking by IBM to protect its former employees": that (1) IBM negotiated terms in the APA that conferred benefits and protections on the Transferred Employees; (2) IBM rejected a potential buyer because it intended to terminate IBM employees shortly after closing the sale; (3) IBM communicated to SmartStream its desire to ensure that its employees received the benefits specified in the APA; (4) IBM made payments to Barton and other employees to incent them to stay with IBM through the acquisition process; and (5) after Barton's termination, an IBM employee initially agreed to investigate SmartStream's non-compliance with the severance-pay provision of the APA. *See* Barton-IBM Opp. Br. 3 (citing Compl. ¶¶ 6–19, 26–27, 39–42).

However, these allegations, separately or in combination, do not support a finding that a *fiduciary* relationship existed between IBM and Barton. Although the first three actions evince a desire on the part of IBM that its employees receive certain benefits and protections, they do not imply that IBM took on a duty to assure that they do so. Critically, the APA left IBM at liberty to act to enforce the severance-pay provision if it chose to do so, but it did not oblige IBM to so act. The fourth action does not in any way speak to post-transaction severance payments.[3] And the fifth, that an IBM employee investigated SmartStream's non-compliance with the APA, does not suggest that IBM assumed a duty to hold SmartStream accountable for any breach of the

---

[3] IBM's payment of incentive bonuses, if anything, undercuts the claim that the Transferred Employees' trust in an enforceable commitment to them by IBM, as opposed to their receipt of this monetary inducement, led them to remain at IBM through the acquisition.

Agreement, *e.g.*, by suing SmartStream for its non-payment of IBM's employees.  Notably, Barton is unable to point to any case in which conduct and/or a provision similar to that alleged here was found to give rise to a fiduciary obligation on the part of an employer to act to safeguard the pay of its current or former employees.  Barton's counsel so conceded at argument. *See* Tr. 30–31 (acknowledgment that counsel does not know of "any case . . . where the failure of [a] selling company to protect its employees post-acquisition effectively sound[ed] in fiduciary duty").[4]

In sum, although the allegations in the Complaint indicate that IBM, as a party to the APA, had a *right* (and an arguable moral obligation) to enforce SmartStream's compliance with the severance-pay provision, they do not permit a plausible inference that IBM took on a *legal duty* to do so.  *See EBC I*, 5 N.Y.3d at 20 ("If the parties . . . do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.").  Barton, therefore, has not established that IBM owed him any fiduciary obligation.  His breach of fiduciary duty claim must be dismissed.

### D.    Leave to Replead

"When a claim is dismissed because of pleading deficiencies, the usual remedy is to permit a plaintiff to amend its complaint."  *A.I.B. Express, Inc. v. FedEx Corp.*, 358 F. Supp. 2d 239, 254 (S.D.N.Y. 2004).  Federal Rule of Civil Procedure 15(a) instructs that courts "should freely give leave [to amend a complaint] when justice so requires."  However, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue

---

[4] *Kurtzman v.* Berstol, 835 N.Y.S.2d 644 (2d Dep't 2007), the only New York case that Barton cites, is inapposite because it involved an attorney-client relationship, a recognized fiduciary relationship.  *See Greene v. Greene*, 56 N.Y.2d 86, 92 (1982) ("[T]he relationship between an attorney and his client is a fiduciary one.").

prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Amendment is futile if an amended complaint would fail to state a claim on which relief could be granted. *See Troung v. Am. Bible Soc'y*, 171 F. App'x 898, 899 (2d Cir. 2006) (summary order); *see also Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

Here, given the unambiguous language of the APA's negating clauses, any amendment of Barton's breach of contract claim against SmartStream would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (where "[t]he problem with [plaintiff's] cause[] of action is substantive[,] better pleading will not cure it[,] . . . [and] [r]epleading would thus be futile"). Accordingly, this claim is dismissed with prejudice.

The Court, however, is not prepared to say that an amendment of Barton's breach of fiduciary claim against IBM would necessarily be futile. The Court therefore grants Barton leave to replead this claim in the event that he is able to allege facts that plausibly give rise to a legal duty owed to him by IBM.

## CONCLUSION

For the foregoing reasons, the Court dismisses Barton's Complaint in its entirety for failure to state a claim. This dismissal is with prejudice as to Barton's claim against SmartStream. However, the Court grants Barton leave to replead his claim against IBM in the event he can allege facts that would plausibly give rise to a fiduciary relationship between the parties. Any amended complaint is due within 14 days from today. If no such complaint is timely filed, the Court's dismissal will be with prejudice.

The Clerk of Court is respectfully directed to close this case.

16

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: May 9, 2016
      New York, New York